THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  1:22CR164 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| LANCE TOBIAS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

During sentencing in this matter, the Court determined that Defendant Lance Tobias was ineligible for safety valve relief. This order further details the Court's denial of that relief.

Congress enacted the safety valve as a way for some of the least culpable offenders to escape certain mandatory minimum penalties. *See United States v. Barron*, 940 F.3d 903, 913 (6th Cir. 2019). If, after the government has a chance to make a recommendation, this Court finds at sentencing that the safety valve's five criteria are met, "the court shall impose a sentence pursuant to the guidelines ... without regard to any statutory minimum sentence." 18 U.S.C. § 3553(f). The statute also authorized the U.S. Sentencing Commission to promulgate Guidelines to effectuate its purposes, which are found in USSG §§ 5C1.2 and 2D1.1(b)(18) (formerly § 2D1.1(b)(17)).

The defendant bears the burden to prove by a preponderance of the evidence that he meets "each and every criterion" of § 3553(f). *Barron*, 940 F.3d at 914 (quoting United *States v. Bazel*, 80 F.3d 1140, 1142 (6th Cir. 1996)). Whether a defendant meets the fifth

criterion "is a fact-specific" determination. *United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996). This final criterion requires that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). This provision adds the caveat that "the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." *Id*.; *see also* USSG § 5C1.2(a)(5). With regard to this final prong, the Sixth Circuit has noted that a defendant

> must show by a preponderance of the evidence that he has truthfully provided the government "all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(5). This includes information about "the offense of conviction and all relevant conduct," U.S.S.G. § 5C1.2 cmt. n.3, making the safety valve's requirement "greater than the requirement for an acceptance of responsibility reduction under U.S.S.G. § 3E1.1." *Adu*, 82 F.3d at 124. In order to satisfy the fifth criterion of the safety-valve provision, a defendant may have to do more than "merely answer[ ] all questions posed by the government." *United States v. O'Dell*, 247 F.3d 655, 675 (6th Cir. 2001). The provision "clearly require[s] an affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense or related offenses." *Adu*, 82 F.3d at 124. This includes "complete information regarding the immediate chain of distribution." *United States v. Maduka*, 104 F.3d 891, 894 (6th Cir. 1997). These "requirements reflect the fact that the safety valve 'was intended to benefit only those defendants who truly cooperate.' " *O'Dell*, 247 F.3d at 675 (quoting *United States v. Marin*, 144 F.3d 1085, 1094 (7th Cir. 1998)).

> Even still, a defendant is "only require[d] ... to provide the information which he possesses, regardless of whether it actually proves helpful to the government." *Maduka*, 104 F.3d at 894–95. And "[t]ypically, the individuals for whom the safety valve was directed will not have useful testimony to provide because of their relatively low position in the criminal enterprise." *United States v. Carpenter*, 142 F.3d 333, 336 (6th Cir. 1998); *see also United States v. Powers*, 194 F.3d 700, 704 (6th Cir. 1999) (noting

that the safety valve was enacted to provide an "escape from mandatory minimum sentences for first-time offenders whose information given to the government does not turn out to amount to 'substantial assistance'").

*United States v. Barron*, 940 F.3d 903, 917 (6th Cir. 2019).

During his sentencing hearing, Tobias contended that his proffer statement truthfully disclosed all of the information that was known to him. For any reviewing Court, the Court has attached, under seal, Tobias' proffer statement. Based upon his argument during sentencing, it appears that Tobias contends that his low-level position in the distribution chain limited his access to information. Moreover, Tobias argued that the drug trade was specifically designed to limit the knowledge of each individual participant. In other words, Tobias attempted to justify the limited information provided in his proffer. Upon review, the Court cannot find that Tobias has provided "all the information he possesses that concerns his offense."

Tobias self-described his role in the offense as a "pitcher and catcher." With regard to "catching," Tobias set up numerous mailboxes in Southern California through which he received packages of U.S. currency. In exchange for the service he provided, Tobias charged a 5% commission based upon the amount of currency in the package. With respect to "pitching," Tobias admitted that he began selling and shipping marijuana as early as 2004. At some time later, Tobias began packaging and mailing drugs on behalf of other criminals. Tobias noted that he charged his customer based upon the type of drug at issue and its market value with a typical charge of $800 to $1,000. Tobias noted that the most he made in one year was roughly $60,000.

Through his own admissions, Tobias either received U.S. currency packages or mailed out drugs dozens of times per year. However, he provided *zero* information

3

regarding his customers. While the Court finds it conceivable that Tobias would not know the true identities of the recipients of the drugs he mailed, that is not the end of the inquiry. Tobias' shipping customers had to provide him the drugs for packaging and mailing. Tobias, however, did not provide *any* information regarding the names or even descriptions of these customers. To this Court, it is inconceivable that Tobias sent out dozens of packages every year, reaped a substantial monetary benefit, and could provide not even the slightest detail about those providing him the drugs for mailing.

Similarly, Tobias offered no information regarding the individuals that picked up the currency from him following his receipt of those packages. Given that Tobias was taking 5% of these packages as his commission, it again defies logic to suggest that Tobias did not negotiate this amount with his customers. Yet, again here, Tobias offered no information of any kind about his customers.

Based upon his own admissions, Tobias became a *trusted* source for both those shipping drugs and those receiving cash payments for drugs. As evidenced by the package that was intercepted by the postal services, drug traffickers were comfortable enough with Tobias' services to send him $9,250 via the U.S. mail and have him ship nearly 300 grams of pills containing fentanyl. Contrary to the position apparently taken by Tobias, that trust is not established without any communication at all. In other words, Tobias had to have communicated with any number of customers in myriad ways throughout his time as a "pitcher and catcher."

Despite the undeniable fact that Tobias had these communications, he offered nothing regarding them. He did not offer a vague description of any of his customers. He could not offer a street name or nickname for any of them. He did not ever even specify

4

*how* he communicated with customers.  For example, Tobias could have provided how he arranged to provide the currency to his end customer after receiving the package and taking his 5% commission.  Similarly, he could have described how potential drug dealers contacted him to arrange shipment of the drugs.  Instead, he remained silent.

Tobias insisted during his sentencing that drug trafficking organizations are deliberately compartmentalized to limit the information known to participants.  The Court does not dispute this fact.  However, it does not assist Tobias with respect to safety valve.  As noted above, Tobias was not required to provide information that was useful to the Government – a standard reserved to substantial assistance.  Instead, he was required to provide *complete* information regarding his knowledge of the offense conduct.  The fact that Tobias failed to provide even a phone number for any of his customers undermines any assertion that he provided all of the information within his possession.

Instead, Tobias' proffer has all the hallmarks of a statement that more closely aligns with acceptance of responsibility.   He effectively admitted to the conduct detailed in the indictment and offered almost no details beyond the information contained in the indictment.  As such, Tobias fell well short of satisfying the fifth and final criterion set forth in 18 U.S.C. § 3553(f)(5).  The Court, therefore, concluded that Tobias was not entitled to safety valve relief and sentenced him accordingly.

IT IS SO ORDERED.

January 18, 2023              ____/s/ Judge John R. Adams_____
                                                             JUDGE JOHN R. ADAMS
                                                             UNITED STATES DISTRICT COURT